IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION
_____

DEVINE MAFA,

    Plaintiff,

vs.                                              No. 2:19-2713-TLP-dkv

AMEDISYS, INC.,

    Defendant.
_____

REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTION TO COMPEL ARBITRATION AND DISMISS COMPLAINT
_____

Before the court is the November 19, 2019 motion of the defendant, Amedisys, Inc. ("Amedisys"), to compel arbitration and dismiss the complaint, or in the alternative, to stay this litigation pending arbitration. (Mot. to Compel Arbitration, ECF No. 11.) In support of its motion, Amedisys filed a memorandum of facts and law, and a declaration of Terrell West, Director of Talent Operations and Compliance for Amedisys. (Mem., ECF No. 12; West Decl., ECF No. 12-1.) The *pro se* plaintiff, Devine Mafa ("Mafa"), did not file a response in opposition. This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order, 2013-05, Apr. 29, 2013.) For the reasons that follow, it is recommended that the motion to compel arbitration be granted.

I. PROPOSED FINDINGS OF FACT

On October 21, 2019, Mafa filed a *pro se* complaint against Amedisys alleging employment discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). (Compl., ECF No. 1.) Mafa also alleges a deprivation of equal rights claim under 42 U.S.C. § 1981 ("§ 1981"). (*Id.*) Mafa paid the filing fee. (ECF No. 2.) Mafa served Amedisys via certified mail and proof of service was filed on October 31, 2019. (*See* Proof of Service, ECF No. 8.) On November 19, 2019, Amedisys filed the motion to compel arbitration and dismiss the complaint, or in the alternative, to stay this litigation pending arbitration, which is currently before the court. (Mot. to Compel Arbitration, ECF No. 11.)

In support of its motion to compel arbitration, Amedisys asserts that on May 31, 2015, Mafa electronically signed an acknowledgement of his receipt of the mandatory alternative dispute resolution program known as the Amedisys Arbitration Program ("Arbitration Program"). (Mem. 2-3, ECF No. 12.) The Arbitration Program is a comprehensive early dispute resolution program for all Amedisys employees that requires, as a condition of employment, all legal disputes between employees and Amedisys to be resolved "before an arbitrator [] rather than in court." (Arbitration Program 1, ECF No. 12-2.) It applies to any claims

2

that allege a violation relating to or arising from the employment relationship, including, by way of example, claims of unlawful discrimination under Title VII. (*Id.* ¶ 1.) The Arbitration Program provides employees access to a toll-free "Arbitration Hotline" to address any questions about the agreement and specifically advises employees that they have the right to "consult with private counsel of [their] choice with respect to any aspect of, or any claim that may be subject to, [the Arbitration Program]." (*Id.* ¶ 9.) Under the Arbitration Program, employees and Amedisys must first attempt to mutually agree on an arbitrator. (*Id.* ¶ 3.) If both sides are unable to agree on an arbitrator, the selection process proceeds "under the auspices" of the American Arbitration Association ("AAA"). (*Id.*)

## II. PROPOSED CONCLUSIONS OF LAW

A. <u>Arbitration Agreement</u>

In ruling on a motion to compel arbitration, the court must first determine whether a valid agreement to arbitrate exists. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967). Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–307, federal law applies to a written provision in a contract "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract." 9 U.S.C. § 2. Thus, the FAA governs any agreement to arbitrate contained in a contract relating to interstate commerce.

3

The term "commerce" for purposes of § 2 of the FAA means "commerce among the several states or with foreign nations." *Id.* § 1. Congress intended this section to apply to all contracts within its power to regulate commerce under Art. 1 § 8, cl. 3 of the Constitution. *See Am. Airlines, Inc. v. Louisville & Jefferson Cty. Air Bd.*, 269 F.2d 811, 815-16 (6th Cir. 1959); *Tenney Eng'g Inc. v. United Elec. Radio & Mach. Workers of Am.*, 207 F.2d 450, 453 (3d Cir. 1953). Specifically excluded are contracts of "employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The Supreme Court has held that this exception "exempts from the FAA only contracts of employment of transportation workers" and not all employment contracts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).

In the present case, it is undisputed that Amedisys is engaged in interstate commerce. Amedisys is a publicly traded company with more than 20,000 employees conducting interstate business transactions in more than thirty states. (West Decl., ECF No. 12-1.) Moreover, the Arbitration Program states that it is governed by the FAA and that agreement to its terms evidences a transaction involving interstate commerce. (Arbitration Program ¶ 1, ECF No. 12-2.) Because Mafa is not engaged in the movement of goods as a seamen, railroad worker, or other class of worker exempted from the FAA, the Arbitration Program is not excluded from the FAA.

4

The FAA preempts state law on the issue of arbitrability in dealing with those contracts falling under the FAA. *See Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). In *Moses H. Cone*, the Supreme Court, affirming a Fourth Circuit judgment enforcing an arbitration clause, stated that the federal act governed the issue of arbitrability of the dispute between parties:

> Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.
> . . .
> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Id*. at 24-25.

"Section 4 of the [FAA] sets forth the procedure to be followed by a district court when presented with a motion to compel arbitration." *Winn v. Tenet Healthcare Corp.*, 2011 WL 294407, at *1 (W.D. Tenn. Jan. 27, 2011)(citing 9 U.S.C. § 4 & *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)). In relevant part, § 4 provides as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States

>    district court . . . for an order directing that such
>    arbitration proceed in the manner provided for in such
>    agreement. . . .  The court shall hear the parties, and
>    upon being satisfied that the making of the agreement
>    for arbitration or the failure to comply therewith is
>    not in issue, the court shall make an order directing
>    the parties to proceed to arbitration in accordance with
>    the terms of the agreement. . . .

9 U.S.C. § 4.

When considering a motion to compel arbitration, the district court has four tasks:

> (1) it must determine whether the parties agreed to arbitrate;
>
> (2) it must determine the scope of that agreement;
>
> (3) if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and
>
> (4) if the court concludes that some, but not all, of the claims are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Sellers v. Macy's Retail Holdings, Inc.*, 2014 WL 2826119, at *6 (W.D. Tenn. June 23, 2014)(citations omitted).  In determining whether the parties agreed to arbitrate, however, ordinary state law principles governing contract formation apply. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 974 (6th Cir. 2007). While "§ 2 of the Act preempts state statutory and case law that treats arbitration agreements differently from any other contract," it also "preserves general principles of state contract

6

law as rules of decision on whether the parties have entered into an agreement to arbitrate." *Cook Chocolate Co. v. Salomon, Inc.*, 684 F. Supp. 1177, 1182 (S.D.N.Y. 1988). Thus, the court must apply Tennessee law to determine if a valid, enforceable contract exists.

Under Tennessee law, a contract must: (1) result from a meeting of the minds of the parties in mutual assent to the terms; (2) be supported by sufficient consideration; and (3) contain sufficiently definite terms. *Doe v. HCA Health Servs. of Tennessee, Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001). A signature on an arbitration agreement evidences assent. *Brubaker v. Barrett*, 801 F. Supp. 2d 743, 756-57(E.D. Tenn. 2011). Further, under Tennessee law, employment constitutes sufficient consideration to support an arbitration agreement. *See Fisher v. GE Med. Sys.*, 276 F. Supp. 2d 891, 894-95 (M.D. Tenn. 2003). Definiteness requires "sufficient explicitness" such that the court "can perceive . . . the respective obligations of the parties." *Higgins v. Oil, Chem. & Atomic Workers Int'l Union, Local No. 3-677*, 811 S.W.2d 875, 880 (Tenn. 1991).

In the declaration filed by Amedisys, Terrell West stated that on May 31, 2015, Mafa electronically affixed his signature to the Arbitration Program and returned it through Amedisys's computer-based onboarding system, SharePoint. (West Decl. ¶ 6, ECF No. 12-1.) Mafa's electronic signature appears on the last

page of the copy of the Arbitration Program filed as an exhibit by Amedisys. (Arbitration Program 8, ECF No. 12-2.) By electronically affixing his signature,[1] Mafa affirmed that he received electronic access to the Arbitration Program, reviewed and understood the terms, and understood that the agreement would be effective immediately. Mafa and Amedisys had a meeting of minds where Mafa affirmed that he reviewed and understood the terms of the Arbitration Program; thus, there is mutual assent. *Doe*, 46 S.W.3d at 196; *Brubaker*, 801 F. Supp. 2d at 756–75. In addition, Mafa's continued employment after signing the Arbitration Program constitutes sufficient consideration. *Fisher*, 276 F. Supp. 2d at 895.

Regarding the definiteness of the terms, the Arbitration Program explicitly states that agreement to the terms is a condition of employment, that Mafa was entitled to consult with private counsel, and that all legal disputes between Mafa and Amedisys would be resolved before an arbitrator rather than in court. (Arbitration Program, ECF No. 12-2.) The Arbitration

---

[1] Electronic signatures have the same effect as handwritten signatures under Tennessee Law. *See* Tenn. Code Ann. § 47-10-107(a)("A record or signature may not be denied legal effect or enforceability solely because it is in electronic form."); *Waddle v. Elrod*, 367 S.W.3d 217, 229 (Tenn. 2012)("[A party's] electronic signature on [an] email confirming the terms of [a] settlement agreement satisfies the signature requirement of the Statute of Frauds.").

8

Program also spells out the process for starting arbitration, the selection of the arbitrator, and lays out in detail the types of claims covered and not covered. (*Id.*) Thus, the terms of the Arbitration Program are sufficiently definite. *Higgins*, 811 S.W.2d at 880. Accordingly, this court finds that there is a binding agreement to arbitrate.

Next, this court considers whether all of Mafa's claims in this lawsuit are covered by the Arbitration Program. Mafa's complaint asserts claims under Title VII for race and national origin discrimination, hostile work environment, and retaliation. (Compl., ECF No. 1.) Mafa also asserts a claim under § 1981. (*Id.*)

The scope of the Arbitration Program is broad. It applies to "any and all legal disputes between [employees] and Amedisys." (Arbitration Agreement 1, ECF No. 12-2.) Further, it specifically applies to "disputes arising out of or related to the employment relationship, . . . termination, discrimination or harassment and claims arising under the . . . Civil Rights Act of 1964." (*Id.* ¶ 1.)

Mafa's complaint alleges Title VII race, national origin, hostile work environment, and retaliation and claims which relate to his employment with Amedisys. (Compl., ECF No. 1.) Mafa's complaint also alleges a § 1981 claim for deprivation of equal rights under the law based on his dealings with Jennifer Geiser,

9

an Amedisys employee.  (*Id.*)  Thus, all of his claims in this lawsuit are covered and arbitrable.  Furthermore, the Sixth Circuit law is clear that Title VII claims are subject to arbitration. *See EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 462 (6th Cir. 1999)(recognizing plaintiff in employment discrimination case waives his right to pursue a private cause of action by agreeing to arbitrate); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 310 (6th Cir. 1991)(holding that claims arising under Title VII are subject to arbitration); *Terry v. Labor Ready, Inc.*, 2002 WL 1477213, at *3 (W.D. Tenn. July 2, 2002)(compelling arbitration in a Title VII case).  Courts outside the Sixth Circuit, employing the same reasoning, have held that claims arising under § 1981 are likewise subject to arbitration.  *Winfrey v. Bridgestone/Firestone, Inc.*, 1999 WL 1295310, at *2 (8th Cir. Dec. 23, 1999); *Williams v. Katten, Muchin & Zavis*, 837 F.Supp. 1430, 1436-37 (N.D. Ill. 1993); *see also Richardson v. Universal Tech. Inst. of Ariz., Inc.*, 2007 WL 1343672, at *3 (W.D. Mich. May 8, 2007)("Other courts, employing the same reasoning, have held that a party may also be compelled to arbitrate claims under § 1981.").

Because there is a binding agreement to arbitrate governed by the FAA and Amedisys is entitled to an order compelling arbitration, the court must determine whether to stay or dismiss this lawsuit pending arbitration.  "The weight of authority clearly supports dismissal of the case when *all* of the issues raised in

10

the district court must be submitted to arbitration." *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000)(quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)); *Sellers*, 2014 WL 2826119, at *10-11 (granting motion to compel arbitration and dismissing case without prejudice). As discussed *supra*, all claims in this lawsuit are subject to arbitration; thus, this case should be dismissed without prejudice.

### III. RECOMMENDATION

For the reasons stated above, this court finds that a valid arbitration agreement exists between Mafa and Amedisys, that the current dispute between the parties falls within the scope of that agreement, and that Congress has not excluded any of Mafa's federal claims from arbitration. Accordingly, it is recommended that Amedisys's motion to compel arbitration be granted, that Mafa be required to submit his claims against Amedisys to the Arbitration Program, and that Mafa's lawsuit be dismissed without prejudice.

Respectfully submitted this 19th day of December, 2019.

    s/Diane K. Vescovo
    DIANE K. VESCOVO
    CHIEF UNITED STATES MAGISTRATE JUDGE

### NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen

(14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.